IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>PHYSIOTHERAPY HOLDINGS, INC. et al.,<br><br>Debtors. | Chapter 11 Case<br>Case No. 13-12965 (KG)<br>(Jointly Administered) |
| PAH LITIGATION TRUST<br><br>Plaintiff,<br>v.<br><br>WATER STREET HEALTHCARE PARTNERS, L.P., *et al.*,<br><br>Defendants. | Adversary Proceeding<br>Case No. 15-51238 (KG) |
| PAH LITIGATION TRUST<br><br>Plaintiff,<br>v.<br><br>WATER STREET HEALTHCARE PARTNERS, L.P., *et al.*,<br><br>Defendants. | C.A. No. 18-1734-LPS<br><br>**JURY TRIAL** |

## <u>MEMORANDUM ORDER</u>

Having reviewed the Proposed Joint Final Pretrial Order (D.I. 101) ("PTO") filed by Plaintiff PAH Litigation Trust ("Plaintiff" or "Trust") and Defendants ("Defendants"), **IT IS HEREBY ORDERED** that:

1. The Court **ADOPTS** Defendants' proposals that do not require exchanging disclosures of cross-examination exhibits (PTO at 7-8, 20, 24) and **REJECTS** Plaintiff's competing proposals.

2. Any unresolved objections to admission of exhibits (PTO at 7, 20) or use of demonstratives (PTO at 24) shall be brought to the Court's attention no later than the morning the exhibit or demonstrative is intended to be used (i.e., 8:30 a.m., before the jury arrives at 9:00 a.m.), or the objection shall be deemed untimely and waived.

3. The Court **REJECTS** Plaintiff's efforts to reserve rights to call additional witnesses (PTO at 8-9) and add exhibits (PTO at 22) and will only permit the parties to make such additions for good cause. Plaintiff's proposed examples of good cause may or may not be found to constitute good cause.

4. The parties will exchange demonstratives to be used in opening statements by 12:00 p.m. on Saturday, July 20, 2019. (PTO at 24)

5. Each side is allocated a maximum of fifteen (15) hours for its trial presentation. Opening statements and closing arguments will be counted as part of this fifteen hours. Defendants' request that the Court reconsider its allocation of time (PTO at 27) is **DENIED**. Having become further acquainted with the issues in dispute, the proposed exhibits, and the witness lists, the Court remains confident that it has provided each side more than adequate time to be fully and fairly heard on each issue to be tried before the jury.

6. All exhibits and other information which are used at trial or whose contents have been displayed in open Court shall be treated as public materials. (PTO at 28)

7. Plaintiff's motion *in limine* ("MIL") No. 1, to exclude evidence purportedly contradicting the damages ruling, will be discussed at the pretrial conference ("PTC") tomorrow.

8. Plaintiff's MIL No. 2, to exclude evidence relating to the Noteholders, is **DENIED**. Such evidence is relevant at least to assessing the "totality of circumstances" and

whether Defendants acted with intent to defraud; it also arguably supports Defendants' theory that PTA's management was not overstating the company's value. The probative value of the challenged evidence is not substantially outweighed by the risk of confusing the jury or unfair prejudice to Plaintiff.

9. Plaintiff's MIL No. 3, to exclude evidence of agreements not binding on the Trust, is **DENIED**. Such evidence is relevant at least to assessing the "totality of circumstances" and whether Defendants acted with intent to defraud; that Court Square released its claims eight months after purchasing Physiotherapy arguably makes it less likely there was fraud here. Neither party will be permitted to "mislead" the jury.

10. Defendants' MIL No. 1, to preclude use of settlement agreements, will be discussed at the PTC tomorrow.

11. Defendants' MIL No. 2, to exclude references to bankruptcy proceedings for purposes of establishing liability, is **DENIED**. Such evidence is probative of the Debtor's financial condition at the time of the allegedly fraudulent transfer, notwithstanding that it occurred in November 2013, 19 months after Court Square's April 2012 purchase. As Plaintiff writes, "the bankruptcy is relevant to the Trust's constructive fraudulent transfer claims, under which the Trust must prove that the Debtor *either* (1) became 'insolvent' as a result of a transfer, (2) was left with 'unreasonably small capital' following a transfer, *or* (3) intended to incur or believed that it would incur debts beyond its ability to pay." This probative value is not substantially outweighed by the risk of confusing the issues or misleading the jury.

12. Defendants' MIL No. 3, to exclude evidence of corporate officers' and employees' purported intent generally, and their actions and intent after the sale in particular, is **DENIED**. Physiotherapy Employees' intent is relevant to the allegations Defendants acted with

intent to defraud. *See, e.g., Rochez Bros., Inc. v. Rhoades*, 527 F.3d 880, 884 (3d Cir. 1975) ("[T]he fraud of an officer of a corporation is imputed to the corporation when the officer's fraudulent conduct was (1) in the course of his employment, and (2) for the benefit of the corporation."). The Court further agrees with Plaintiff: "Post-transaction conduct is often admitted to show pre-transaction intent. . . . It took time to uncover the fraud because the senior managers who committed it covered their tracks after the sale." Nor do any of the concerns of Rule 403 substantially outweigh the probative value of this evidence.

13. The parties shall be prepared to discuss Plaintiff's motion to exclude the testimony of Renjilian and Gokhale (D.I. 46) at the PTC tomorrow.[1]

14. Plaintiff's motion to exclude the testimony of Fischel with respect to pre-transaction solvency (D.I. 46) is **DENIED**. The Court agrees with Defendants that "one of the key issues in this case is the value of Defendants' equity at the time the transfer was made, because that is the value of consideration paid by a transferee." (D.I. 63 at 15) (internal citations and quotation marks omitted) Also, Fischel's pre-transaction solvency analysis may provide relevant context to his post-transaction solvency analysis. (*Id.* at 16) None of Plaintiff's bases for exclusion are persuasive.

---

[1] In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993), the Supreme Court explained that Federal Rule of Evidence 702 creates "a gatekeeping role for the [trial] judge" in order to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Rule 702(a) requires that expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue." Expert testimony is admissible only if "the testimony is based on sufficient facts or data," "the testimony is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d). There are three distinct requirements for proper expert testimony: (1) the expert must be qualified; (2) the opinion must be reliable; and (3) the opinion must relate to the facts. *See Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000). "Rule 702 embodies a 'liberal policy of admissibility.'" *B. Braun Melsungen AG v. Terumo Med. Corp.*, 749 F. Supp. 2d 210, 222 (D. Del. 2010) (quoting *Pineda v. Ford Motor Corp.*, 520 F.3d 237, 243 (3d Cir. 2008)).

15. The parties shall be prepared to discuss the portion of Plaintiff's motion directed to Fischel's statement that he cannot independently verify the valuation of Physiology that was prepared by Rothschild, Inc. at the PTC tomorrow.

16. Plaintiff's motion to exclude the testimony of Puntillo, a former investment banker and emeritus professor of finance, is **DENIED**. Puntillo intends to testify that the sale of Physiotherapy to Court Square was done in a customary fashion, with all the usual process. Such evidence fits the issues in dispute and will be helpful to the jury. Plaintiff's criticisms (e.g., that Puntillo did not consider evidence of fraud) go to the weight of the testimony and not its admissibility.

17. Defendants' motion to strike testimony of Dharan, Hurley, Smith, and Unni, as purportedly being improper state of mind, vouching, and narrative (D.I. 40), is **DENIED**. Professor Dharan is an expert in accounting. His testimony regarding Physiotherapy's management's knowledge informs his opinion on compliance with generally accepted accounting principles ("GAAP") and will not invade the jury's province of determining state of mind and credibility. Hurley is a licensed CPA with decades of healthcare-specific experience. He does not improperly vouch for Professor Dharan or provide improper state of mind testimony but instead properly uses his relevant expertise to provide helpful opinions on accounting practices specific to healthcare providers. Smith is a valuation and solvency expert who relies on her expertise to provide helpful opinions and does not improperly vouch for other experts or opine on intent, motive, and alleged knowledge of fact witnesses. Dr. Unni is a finance and economics expert whose challenged testimony is not an improper or unhelpful narrative (assuming, without deciding, that damages will be a subject of the trial).

18. The parties shall be prepared to discuss the portion of Defendants' motion

(D.I. 40) directed to Dr. Unni's opinions on the measure of damages.

19. The portions of Defendants' motion (D.I. 42) directed to Dr. Unni's opinions on prejudgment interest and windfall are **GRANTED**. Prejudgment interest will be an issue for the Court, not the jury; should either party believe expert analysis is necessary or helpful for the Court if/when it reaches the issue of interest, such party may request the opportunity to present such expert analysis. The Court agrees with Defendants that whether any particular damages recovery would constitute a "windfall" is also an issue for the Court and not the jury, making the proposed testimony unhelpful to the jury.

20. Defendants' motion to exclude opinions of Smith set out in paragraph 5 of her "Supplement to Rebuttal Report" (D.I. 44) is **DENIED**. The opinions relate to net collectible revenue which, although an accounting concept, may be used as an input for valuation. Therefore, the opinion of a valuation expert as to how the metric is calculated fits the facts of the case and may be helpful to the jury. As with all challenges to expert testimony, Defendants (like Plaintiff) will be free to cross-examine the expert and to present competing expert testimony (subject to any rulings of the Court).

21. In addition to other matters noted to be discussed at the PTC tomorrow, the parties shall be prepared to address the following issues at the PTC:

  A. Whether Defendants' affirmative defenses (a) have been previously decided and/or (b) are equitable and raise questions of law such that they should be decided by the Court, not the jury.

  B. Whether Defendants may argue at trial that the transfer was not the property of the Debtor.

C. The answers to the questions posed in today's oral order. (D.I. 114)

D. Whether damages will be a subject of the July jury trial.

E. Plaintiff's objections to Defendants' listing of witnesses King and Ernst & Young LLP (PTO at 13-15 & Ex. 1).

July 2, 2019
Wilmington, Delaware

_____
HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT COURT